UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHANEL BAYLOR | : |
| 1000 Mount Pleasant Avenue | : |
| Wayne, PA 19087 | : |
|     PLAINTIFF | : NO. |
|     v. | : |
| CAPITAL WINE  & SPIRITS | : |
| COMPANY, LLC d/b/a | : |
| BREAKTHRU BEVERAGE GROUP | :CIVIL ACTION |
| 129 Hartman Road | : |
| North Wales, PA 19454 | : JURY TRIAL DEMANDED |
|     DEFENDANTS | : |

**COMPLAINT AND JURY DEMAND**

**I.      PARTIES**

1.      The Plaintiff is Shanel Baylor, an African American female who resides at 1000 Mount Pleasant Avenue, Wayne, PA 19087.

2      The Defendant is Capital Wine & Spirits Company, LLC, is a duly authorized legal entity doing business in the Commonwealth of Pennsylvania at  129 Hartman Road, North Wales, PA 19454. Upon information and belief, Defendant does business also under the fictitious name "Breahthru Beverage Group."

3.      At all relevant times herein, the actions complained of – leading up to and culminating in plaintiff's unlawful and discriminatory discharge– were undertaken and performed by officers and/or employees of Defendant, either alone or in conjunction, concert, and agreement with other officers and/or employees of Defendant.

4.      At all times relevant hereto, Defendant acted through its agents, servants, and employees, who were authorized and acting within the scope of their and within the

1

course and scope of their authority, agency or employment .

5.      This action is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*., as amended ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), the Pennsylvania Human Relations Act, 43 P.S. §951 et seq. ("PHRA"),

6.      At all times material herein, Defendant has been a "person" and "employer" as defined under Title VII, the ADEA, and the PHRA and has been, and is, subject to the provisions of each said Act.

7.      All conditions precedent to the institution of this suit have been fulfilled. The Plaintiff cross-filed a proper verified Complaint with the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission and have exhausted the requisite administrative remedies before those agencies prior to timely filing this action. On May 7, 2026, a Notice of Right to Sue was issued by the United States Equal Employment Opportunity Commission. This action has been filed within ninety (90) days of receipt of said notice. **Exhibit "A"**

II.      **UNDERLYING FACTS**

7.      Plaintiff worked for Defendant from August 4, 2023 to February 13, 2025, as a promotion's supervisor.

8.      Plaintiff consistently performed her job duties well and received favorable reviews.

9.      Plaintiff supervised approximately twenty promotions associates and had no disciplinary issues.

2

10. While employed by Defendant, Plaintiff was part of a team comprised of Defendants's Vice-President of Sales and Strategic Accounts, Jessica LeMin ("LeMin") manager Stephanie Adelman ("Adelman"), two additional promotions supervisors, Kevin Policz ("Policz"), and Reilly Donovan ("Donovan"), and one Administrator, Rachel Sofroney ("Sofroney").

10. On or about September 28, 2024, Plaintiff was involved in a motor vehicle accident that caused physical injuries and limitations, including difficulty sitting for extended periods, lifting restrictions, and the need for accommodations including remote work flexibility and a standing desk.

11. Plaintiff promptly notified Human Resources and management of her injuries, limitations, and need for accommodations.

12. Shortly after Plaintiff disclosed her disabilities and requested accommodations, Plaintiff began experiencing heightened scrutiny, hostility, and retaliatory treatment.

13. After Sofroney left the department and Tracy Ridler ("Ridler") joined the team, Plaintiff began experiencing targeting and differential treatment from Ridler and Policz.

14. Ridler falsely reported that Plaintiff's team members were failing to submit required event recaps and reports.

15. Plaintiff repeatedly produced documentary evidence, including emails and Microsoft Forms submissions from promotions associates, confirming that required work had in fact been completed and submitted.

3

16.    Despite this evidence, management continued to scrutinize Plaintiff and reject completed work without legitimate explanation.

17.    Plaintiff, being the only African American female on her team, began being targeted by Ridler and Policz, and was subjected to racial targeting, disparate treatment, and daily racial microaggressions from Ridler and Policz.

18.    Plaintiff reported the discriminatory conduct and targeting to Human Resources Director Tekeva Sheard ("Sheard") and to management, including LeMin, and forwarded emails from other associates as proof that Ridler was targeting Plaintiff.

19.    Plaitniff specifically informed Sheard that Plaintiff was being attacked with daily microaggressions from both Ridler and Policz.

20.    Sheard took no action. Ridler, along with Policz, began isinuating that Plaintiff did not manage her team, despite Plaintiff having several emails from her associates stating they had submitted all work via Microsoft Forms.

21.    Defendant failed to meaningfully investigate Plaintiff's complaints or take corrective action.

22.    Instead of addressing Plaintiff's complaints, Defendant escalated discipline against Plaintiff shortly after her complaints and accommodation requests.

23.    For example, Plaintiff was "written up" on October 21, 2024, for not attending a career fair despite Plaintiff sending her supervisor and Sheard work limitations from Plaintiff's physician and after arranging to swap responsibilities for the fair with a co-worker.  The write up came after Plaintiff was specifically excused by the Sheard.

24.    The allegations concerning the career fair were false.as notes, Plaintiff had previously notified management and Human Resources of her medical limitations. Plaintiff was expressly excused from attending the career fair by Human Resources Director Sheard.

25.    Plaintiff also arranged for coverage of the event by a co-worker, and another supervisor, Reilly Donovan, was recruiting during the same period.

26.    Despite previously excusing Plaintiff from attendance, Sheard later approved discipline against Plaintiff for missing the event.

27.    On or about October 21, 2024, Plaintiff was additionally disciplined for taking a sick day related to pain from the motor vehicle accident despite Plaintiff having submitted requests to Human Resources.

28.    Prior to October 2024, Plaintiff had not received meaningful coaching, progressive discipline, or collaborative performance management discussions.

29.    Defendant's sudden escalation of discipline closely followed Plaintiff's accommodation requests and complaints of discrimination.

30.    During the months of October through December 2024, Ridler and Policz repeatedly harassed Plaintiff concerning allegedly "missing recaps" despite evidence that Plaintiff's team had timely submitted work.

31.    Plaintiff repeatedly alerted management that the accusations were false and retaliatory. Defendant ignored Plaintiff's evidence and continued compiling a paper trail against Plaintiff.

32.    Plaintiff later discovered that management had created false and misleading documentation intended to justify her termination.

33.     Plaintiff was also removed from projects she had worked on for months shortly after complaining about discrimination and harassment. Defendant falsely claimed that Promotions Associate Cindy Elliott resigned because of Plaintiff's communication. In reality, Elliott's concerns related to personal family circumstances, including her daughter's pregnancy and inability to maintain required availability.

34.     Defendant also falsely claimed Plaintiff declined meetings and failed to report discrimination.  However, Plaintiff had repeatedly requested meetings with management and Human Resources to discuss targeting, harassment, and discriminatory treatment. Plaintiff repeatedly complained about racial discrimination, differential scrutiny, and retaliatory conduct.

35.     On January 23, 2024, Policz was promoted to become Plaintiff's direct supervisor with no investigation into Plaintiff's claims and despite Plaintiff being qualified for the position and despite Plaintiff's complaints regarding his discriminatory conduct.

36.     The promotion of Policz further intensified the hostile work environment and retaliation against Plaintiff.

37.      On January 31, 2025, Defendant later mischaracterized a lengthy telephone call involving Plaintiff and Policz as performance coaching when, in reality, the discussion primarily concerned correction of a mistaken call and related issues.

38.     On February 2, 2025, Plaintiff reported a hostile environment and discrimination.

39.     In response, Plaintiff was then placed on a Performance Improvement Plan ("PIP").

40.     The PIP was retaliatory and pretextual and was designed to force Plaintiff out rather than improve performance.

41.     Plaintiff completed tasks assigned during the PIP period, but Defendant rejected Plaintiff's work without legitimate explanation.

42.     Plaintiff repeatedly sought assistance from Human Resources and questioned how she could succeed under a PIP administered by individuals actively targeting heron February 6, 2025.

43.     Defendantsalso falsely asserted that Plaintiff failed to apply for FMLA leave and improperly submitted time-off requests. Plaintiff in fact applied for FMLA leave and possessed written confirmation showing that her time-off requests were properly submitted and visible in the company system.

44.     Defendant's own documentation utilized racially coded language and descriptors concerning Plaintiff, including comments describing Plaintiff as "stone-faced," "out in space," and references to Plaintiff's children and background noise during communications.

45.     Such comments were unrelated to job performance and were not similarly applied to white employees.

46.     Defendant's conduct created an abusive, discriminatory, retaliatory, and hostile work environment.

47.     Plaintiff suffered emotional distress, humiliation, anxiety, and economic damages as a direct result of Defendant's conduct.

7

48.    On February 13, 2025, after enduring ongoing racial discrimination, disability discrimination, retaliation, false discipline, and a retaliatory PIP, Plaintiff was forced to resign because the working conditions had become intolerable.

**COUNT I**
**DISCRIMINATION**
**42 U.S.C. §1981 *et seq.* TITLE VII, AND THE PHRA**

49.    Plaintiff incorporates herein by reference and makes a part hereof the preceding paragraphs as fully as though the same were set forth herein at length.

50.    Plaintiff, as a member of the African American race was discriminated against by Defendants because of her race, as provided under 42 USC§1981 and has suffered damages as set forth herein.

51.    Plaintiff was subjected to disparate treatment, harassment, heightened scrutiny, false accusations, and disciplinary action because of her race.

52.    Similarly situated white employees were not subjected to the same scrutiny, discipline, or treatment.

53.    The disparate treatment includes refusals to investigate, sending false emails, false reports, and promotions of Caucasian employees.

54.    Defendant promoted white employees over Plaintiff despite Plaintiff's qualifications and complaints regarding discriminatory conduct.

55.    Defendant has no legitimate nondiscriminatory reason for the disparate treatment to which Plaintiff was subjected.

WHEREFORE, for the foregoing reasons, Plaintiff demands judgment against Capital Wine & Spirits Company, LLC, d/b/a Breakthru Beverage Group, an amount to be determined at the time of trial plus interest, liquidated damages, statutory damages,

attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.

## COUNT II
### INTENTIONAL RACE/ETHNIC DISCRIMINATION (RETALIATORY HOSTILE WORK ENVIRONMENT) IN VIOLATION OF 42 .S.C. § 1981 AND THE PHRA 43 P.S. 951 et seq.

56.    Plaintiff incorporates herein by reference and makes a part hereof the preceding paragraphs as fully as though the same were set forth herein at length.

57.    To state a claim for a retaliatory hostile work environment, a plaintiff must show that a complaint protesting a hostile work environment or retaliation for filing a previous discrimination complaint resulted in materially adverse action or actions which would have dissuaded a reasonable person from making the complaint in the first place.

58.    The factual allegations that support retaliatory hostile work environment are expressly incorporated into this Complaint and fully reiterated here by way of reference. However, for the reasons discussed above Plaintiff alternatively recasts those averments with regard to the actors' motivation and/or state of mind, expressly alleging instead that the underlying conduct was based solely on racial animus.

59.    As mentioned above, Plaintiff repeatedly complained to the HR Department regarding a racially hostile work environment. Rather than investigate, Defendants instead put Plaintiff on probation and then promoted the actor which caused the discrimination to be her supervisor.

60.    By and through the conduct of Defendant's supervisors and management-level representatives of the human resources department, Defendant had express and direct knowledge that Plaintiff was being propounded with racial harassment. As averred

9

previously, the supervisors and personnel of Defendant failed to take any action whatsoever with regard to Plaintiff's complaints to Human Resources and other official reports to supervisors or management level employees of Defendant protesting racial discrimination.

61. Additionally, Defendant failed to effectively monitor the workplace, implement protocol measures to ensure a hostile work environment is promptly abated, and failed to provide an effective system for processing, addressing, and resolving complaints of racial discrimination.

62. But for Defendant's conduct described hereinabove, Defendant would not have created a racially and retaliatory hostile work environment solely because Plaintiff belong to a certain race or perceived race.

63. As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, for the foregoing reasons, Plaintiff demands judgment against Capital Wine & Spirits Company, LLC, d/b/a Breakthru Beverage Group in an amount to be determined at the time of trial plus interest, liquidated damages, statutory damages, attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.

**COUNT III**

**EMPLOYMENT DISCRIMINATION ON THE BASIS OF ACTUAL AND/OR PERCEIVED DISABILITY**

64.     Plaintiff incorporates herein by reference and makes a part hereof the preceding paragraphs as fully as though the same were set forth herein at length.

65.     At all relevant times hereto, Plaintiff suffered from an actual or perceived disability and/or medical condition due to a motor vehicle accident.

66.     At all times relevant hereto, Defendant was made aware that Plaintiff suffered a physical disability and/or medical conditions. At all relevant times, Defendant was made aware of Plaintiff's restrictions because Plaintiff communicated them to Defendant.

67.     Despite Plaintiff's notifications Defendant of the nature of her physical diabilities and/or medical conditions, Defendant subjected Plaintiff to hostility and discriminatory treatment as detailed above and incorporated herein by reference. After she disclosed her limitations including the pain she was experiencing,  Plaintiff's working conditions continued to deteriorate for the worst. More specifically, Plaintiff continued to be ridiculed, demeaned, subjected to hostility, placed on a PIP, refusing to accommodate Plaintiff, and having Plaintiff work in violation of her restrictions.

WHEREFORE, for the foregoing reasons, Plaintiff demands judgment against Capital Wine & Spirits Company, LLC, d/b/a Breakthru Beverage Group in an amount to be determined at the time of trial plus interest, liquidated damages, statutory damages,

attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.

## COUNT IV
### CONSTRUCTIVE DISCHARGE ON THE BASIS OF RACE IN VIOLATION OF TITLE VII AND THE PHRA 42 U.S.C. § 2000e, et seq.; 43 P.S. § 951, et seq.

68.     Plaintiff incorporates herein by reference and makes a part hereof the preceding paragraphs as fully as though the same were set forth herein at length.

69.     Notably, constructive discharge occurs when an "employer knowingly permits conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Goss v. Exxon Office Sys. Co*., 747 F.2d 885, 887 (3d Cir. 1984). "A hostile work environment will not always support a finding of constructive discharge. To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 316 n.4 (3d Cir. 2006) (cleaned up).

70.     As noted above, Plaintiff sustained and endured an extreme and prolonged hostile work environment.

71.     Despite many complaints about discrimination, Defendant failed to implement any measures to rectify the hostile work environment. Upon information and belief, Defendant absolutely and utterly failed to even investigate the Plaintiff's complaints and reports of discrimination.

72.     Instead, Defendant imposed retaliatory discipline on the Plaintiff for filing reports of rdiscrimination, namely by placing the Plaintiff on a PIP.

12

73.     Having been degraded in the above-mentioned manner, Plaintiff could no longer perform her job function. Moreover, Defendant forced Plaintiff to report to the very individual who contributed to her discrimination.

74.     As such, in this setting and context, the Plaintiff had no viable choice but to tender her resignation on February 13, 2025, because the work conditions were so intolerable that the Plaintiff simply had to quit in order to be free from racial discrimination at the workplace.

75.     Any reasonable person standing in the shoes of the Plaintiff, and enduring what she endured, would resign from employment.

76. Therefore, Defendant constructively discharged the Plaintiff in violation of Title VII and the PHRA.

77.     As a direct and proximate result of Defendant's conduct described hereinabove, the Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, for the foregoing reasons, Plaintiff demands judgment against Capital Wine & Spirits Company, LLC, d/b/a Breakthru Beverage Group in an amount to be determined at the time of trial plus interest, liquidated damages, statutory damages, attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.

*Robert J. Birch*

Dated: June 28, 2026

Robert J. Birch, Esquire
Id. 65816
PO Box 1133
North Wales, PA 19454
610-277-9700

14

## VERIFICATION

I, Shanel Baylor, hereby state that the facts set forth in the foregoing Complaint are true and correct to the best of my knowledge, information and belief. I understand that this verification is made subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.


DATED: June 17, 2026

_____

                            Shanel Baylor

# EXHIBIT A

 **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Philadelphia District Office**
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 05/07/2026

**To:** Shanel Baylor
1000 Mount Pleasant Avenue
Wayne, PA 19087
Charge No: 530-2025-08735

EEOC Representative and phone:    Legal Unit
267-589-9707

---

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 530-2025-08735.

On behalf of the Commission,

Digitally Signed By: Karen McDonough
05/07/2026
Karen McDonough
Deputy Director

16